[No. 11596.   Department Two. — August 31, 1886.]

# SWAMP LAND DISTRICT NO. 307, Respondent, *v.* WILLIAM GWYNN et al., Appellants.

Swamp Land — Reclamation — View by Commissioners — Joint View not Necessary. — Under section 3456 of the Political Code, the commissioners appointed to make an assessment for the reclamation of swamp land need not act jointly in viewing the lands within the district.

Id. — Sufficiency of View — Finding — Evidence. — The court found that the lands in the district, and each and every tract thereof, were viewed by the commissioners. At the time of the view, the lands were mostly covered with water, but the commissioners were at a point where they could look over the whole area of the district and see every part of it, except a few small parcels along its eastern margin, which were hidden from view by trees. *Held*, that the finding was sustained by the evidence, and that the view was not insufficient in point of law.

Id. — Assessment Roll — Evidence to Contradict — Arbitrary Assessment. — Conceding that the assessment roll of a swamp-land district, when properly certified by the commissioners, becomes an official record within the meaning of sections 1920 and 1926 of the Code of Civil Procedure, and evidence of all the facts recited in it, still it is only *prima facie* evidence, and may be contradicted by showing that the assessments were arbitrarily made without reference to the proportionate benefits to be derived to each piece of land assessed by reason of the proposed work.

Id. — Satisfaction of Assessment — Tender of Warrant of District. — The defendants tendered in payment of the assessment a warrant of the district for a larger sum than the amount of the assessment. The warrant was owned by a third person, and was tendered only for the purpose of having the assessment indorsed thereon, and was not intended to be given up and canceled. *Held*, that the tender was not a satisfaction of the assessment under section 3465 of the Political Code.

Appeal from a judgment of the Superior Court of Yolo County, and from an order refusing a new trial.

The action was brought to enforce an assessment for the reclamation of swamp land. Prior to and at the trial the defendants tendered a warrant of the district in payment of the assessment. The tender purported to be made in conformity with section 3465 of the Political Code, which provides that the assessments may be paid "in warrants of the district, drawn by order of the trustees thereof, and approved by the board of supervisors. Where payment is made in the warrants of the district,

legal interest must be computed thereon from the date thereof to the time of such payment, when said warrants must be surrendered to the treasurer, and by him canceled." The further facts are stated in the opinion.

*W. H. Beatty*, and *S. C. Denson*, for Appellants.

*Armstrong & Hinkson*, for Respondent.

Belcher, C. C. — This is an action to enforce payment of an assessment made for reclamation of swamp lands.

The plaintiff recovered judgment, from which, and an order denying a new trial, the defendants appeal.

1. Under the provisions of the code, when an assessment for swamp-land purposes is to be made, three commissioners must be appointed, who are disinterested persons and residents of the county, "and who must view and assess upon the lands situated within the district a charge proportionate to the whole expense, and to the benefits which will result from such works." (Pol. Code, sec. 3456.)

Under the statutes formerly in force, the commissioners were required to jointly view the land, and failing to do that, their assessment was void. (*People* v. *Coghill*, 47 Cal. 361; *People* v. *Hagar*, 49 Cal. 229.) Now they are not required to act jointly in viewing the lands. It is sufficient if, as they did here, two go together and the other alone to view it.

But if this be so, it is urged that they did not sufficiently view the land to enable them to make a valid assessment. The court found that they viewed all the lands in the district, and each and every tract thereof, and there was evidence, we think, tending to sustain the finding. It is true, the lands were mostly covered with water, but the commissioners were at a point where they could look over the whole area of the district and see every part of it, with the exception of a few small parcels

along its eastern margin, which was hidden from view by trees. Their duty was to make such an examination of the lands of the district as would enable them to form an intelligent judgment as to the benefits which each part would receive from the completed works of reclamation, and as matter of law we cannot say that they failed to perform their duty.

2. It is alleged in the complaint that the commissioners, after viewing each tract of land, assessed upon the same charges proportionate to the entire expense and the benefits which would result to each tract from the works of reclamation, and on the same day made a list of the charges assessed by them, etc.

The defendants by their answer denied that the commissioners assessed upon the several tracts of land charges proportionate to the entire expense, and to the benefits which would result to each tract from the works of reclamation. And they alleged that the commissioners did not make any examination, computation, or estimate as to the result or effect of the proposed work of reclamation upon each tract of land in the district, but arbitrarily assumed that each and every acre of land in the district should be assessed for an equal share of the entire sum to be raised; and without considering whether some tracts would be benefited by the proposed work more or less than other tracts, arbitrarily assessed each tract at the same rate per acre, when in fact some tracts, if the proposed works should be carried out and completed, would be greatly benefited and enhanced in value, while other tracts would be benefited very little, if at all. And they further alleged that the assessment was unfair, unequal, and unjust to the defendants, for that the lands described in the complaint would not be benefited to the same extent as other lands of other owners in the district.

At the trial, the plaintiff, after introducing certain preliminary proofs, offered in evidence the assessment roll,

with the certificate attached thereto, signed by the com-
missioners. Among other things, the commissioners
certify that "we did view said lands, and assess said sum
of thirty-nine thousand dollars as a charge upon the
lands within said district for the purpose of completing
the reclamation of said district, which charge was and is
made proportionate to the whole expense, and to the bene-
fit which will result from such works of reclamation."

The defendants objected to the assessment roll being
received in evidence, and in support of their objection
sought to prove by one of the commissioners that in
making the assessment and apportioning the money to
be raised among the several tracts of land in the district,
the commissioners never considered, discussed, or in any
way referred to the proportional benefits to be derived to
each piece of land by reason of the work to be done for
which the assessment was levied, but arbitrarily, and
without considering the question of benefits to any piece
of land in the district, assessed an equal sum upon each
acre, in obedience to what they understood to be a by-
law of the district; and further, that some of the tracts
of land in the district would be benefited very much
more than other tracts by the work of reclamation. The
plaintiff objected to each of the several questions asked,
upon the ground that it was irrelevant, immaterial,
and incompetent, and the court sustained the objection,
the defendants reserving an exception. Thereupon the
court overruled the objections to the assessment roll and
admitted it in evidence, and the defendants excepted to
that ruling.

It was proved that about ten days after viewing the
land, the commissioners met at the office of the attorney
for plaintiff, and found the assessment roll there, and
nearly written up; that the attorney then, under their
instructions, computed the amount to be charged against
each tract, and entered the same on the roll, and that
thereupon they signed the certificate.

It is argued for the respondent that when the commissioners signed the certificate the assessment roll became a record of official acts, and could not afterward be impeached or questioned, except for fraud.   And in support of this contention, among other authorities, sections 1920 and 1926 of the Code of Civil Procedure are called to our attention.   Those sections read as follows:—

"1920.   Entries in public or other official books or records, made in the performance of his duty by a public officer of this state, or by another person in the performance of a duty specially enjoined by law, are *prima facie* evidence of the facts stated therein."

"1926.   An entry made by an officer, or board of officers, or under the direction and in the presence of either, in the course of official duty, is *prima facie* evidence of the facts stated in such entry."

Conceding that when the commissioners signed the certificate it became an official record and evidence of all the facts recited in it, still it was only *prima facie* evidence, and as such was subject to be contradicted.

"*Prima facie* evidence is that which suffices for the proof of a particular fact until contradicted and overcome by other evidence.   For example: the certificate of a recording officer is *prima facie* evidence of a record, but it may afterward be rejected upon proof that there is no such record."   (Code Civ. Proc., sec. 1833.)

The commissioners were required to assess upon the lands "a charge proportionate to the whole expense, and to the benefits which will result from such works."

When special duties are enjoined upon commissioners, as in this case, the law must be strictly complied with, and any substantial departure from its requirements will render their acts void.   (*People* v. *Coghill*, 47 Cal. 361; *People* v. *Hagar*, 49 Cal. 229; *People* v. *Ahern*, 52 Cal. 208.)

We think that, notwithstanding the certificate signed by the commissioners, the defendants were entitled to prove, if they could, that the assessment involved in this

case was not made in conformity to the requirements of the law, and so was not binding upon them, and that the court erred in excluding the proper evidence.

3. Without expressing any opinion as to the validity of the warrant tendered in satisfaction of the assessments sued for, we think the court did not err in finding that the assessments were not in fact satisfied by the tender.

As pleaded and proved, the warrant was for a larger sum than the aggregate amount of the assessments, and was owned by D. O. Mills & Co., a banking corporation doing business at Sacramento.

Under some arrangements made with the defendants, it was tendered to the county treasurer only for the purpose of having the assessments indorsed upon it, and not to be given up and canceled. This was not sufficient. (Pol. Code, sec. 3465.)

Nor was the tender in court at the trial of any avail. Such a tender is not authorized by any statute that we are aware of.

For the error above noted, the judgment and order should be reversed, and the cause remanded for a new trial.

SEARLS, C., and FOOTE, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment and order are reversed, and cause remanded for a new trial.